UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ISHMAIL F. MUHAMMAD,

                                Plaintiff,

              -vs-                                          08-CV-182(JTC)

C.O. REEVES, et al.,

                                Defendants.

---

APPEARANCES:                 ISHMAIL F. MUHAMMAD, Plaintiff *Pro Se.*

                                     HON. ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL OF THE STATE OF NEW YORK, (STEPHANIE JOY CALHOUN, ASSISTANT ATTORNEY GENERAL, OF COUNSEL), Buffalo, New York, Attorneys for Defendants.

## INTRODUCTION

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 seeking damages for the alleged violation of his rights under the First and Eighth Amendments.[1]  Currently pending before the court is the defendants' motion for summary judgment (Item 56).

## BACKGROUND

Plaintiff commenced this action on March 3, 2008 with the filing of a *pro se* complaint pursuant to Title 42 U.S.C. § 1983 (Item 1).  He filed an amended complaint

---

[1] In addition to "Free Speech," "Failure to Protect," and "Denial of Medical Treatment," plaintiff also circled "Religion," "Access to the Courts," and "Equal Protection" on his form complaint.  However, plaintiff has asserted no facts in support of the latter claims.  To the extent that plaintiff intended to allege claims for the denial of equal protection, freedom of religion, or access to the courts, these claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

on September 22, 2008 (Item 6). Plaintiff seeks damages for alleged failure to protect, denial of medical treatment, and retaliation in violation of his rights under the First and Eighth Amendments to the United States Constitution. Specifically, plaintiff alleges that the defendants failed to protect him from an assault by another inmate on March 4, 2005 at Wende Correctional Facility ("Wende"). Following the assault, plaintiff alleges that he was subjected to unsanitary conditions in an infirmary cell and was denied medical treatment for his wounds. Plaintiff also alleges that defendants allowed his wedding ring to be stolen from his cell and that defendants falsified misbehavior reports in retaliation for his grievances. On his form complaint, plaintiff acknowledged that he had instituted a lawsuit in the New York State Court of Claims dealing with the same facts (Item 1). At the time of the filing of this complaint, the state court action was still pending. *Id.* In an order filed August 26, 2008, plaintiff was granted permission to proceed *in forma pauperis* (Item 5).

On September 18, 2009, the parties consented to the referral of this matter to United States Magistrate Judge H. Kenneth Schroeder, Jr. pursuant to 28 U.S.C. § 636(c) for all further proceedings including the entry of judgment (Item 14). Defendants filed answers to the complaint on November 19, 2009 (Items 21-29). Following the parties' exchange of discovery materials and pursuant to a case management order (Item 55), on August, 29, 2012, the defendants moved for summary judgment (Item 56). The notice of motion contained a "Notice to *Pro Se* Litigants Opposing Summary Judgment" in which plaintiff was advised that he may not oppose summary judgment simply by relying on the allegations in the complaint. Additionally, plaintiff was warned that if he failed to respond to the motion for summary judgment "on time with affidavits

or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true" and enter judgment in favor of defendant. *Id.*

The plaintiff has not filed a response to the motion. On November 7, 2012, the case was transferred to the docket of the undersigned (Item 63). The court has determined that oral argument is unnecessary. For the reasons that follow, the defendants' motion for summary judgment is granted and the complaint is dismissed.

## FACTS[2]

In support of the motion, the defendants have submitted a decision after trial (Item 57) and a trail transcript of plaintiff's state court case (Items 58 - 61). The case, *Ishmail v. State of New York*, was tried before Judge Michael Hudson in the New York State Court of Claims on June 6, 2011. In his decision after trial, Judge Hudson found that, on March 4, 2005, plaintiff was released from his cell at Wende for a library visit. Defendant Reeves was the Corrections Officer ("CO") providing security in the library that morning. Plaintiff sat at a table that was beyond the direct view of CO Reeves. After reading for about 40 minutes, plaintiff felt a sharp thump to the back of his neck. He reached back and discovered that he was bleeding. Plaintiff struggled with his assailant, who was behind him, and sustained stab wounds to his back, throat, arms, and chest. Several COs responded to the commotion and defendant Reeves observed

---

[2] This factual statement is taken from the defendants' declarations in support of the motion with exhibits (Item 56, atts. 4-7), the plaintiff's complaint (Item 1), and the transcript and decision in plaintiff's state court negligence case (Items 57-61)..

3

another inmate, Eric Thomas, punching plaintiff. Plaintiff denied that Thomas was the assailant, however, as Thomas's skin was darker than that of the assailant. Eventually, plaintiff was transported to the Erie County Medical Center ("ECMC") where he remained for three days. Plaintiff asked defendant Lucas to call the cell block and make sure that his wedding ring was secured. Lt. Lucas testified that he made the call, but the ring was lost. Plaintiff was transferred back to the medical unit at Wende, and complained that the room had not been cleaned and contained soiled clothing and bedding. The next day, plaintiff's room was thoroughly cleaned (Item 57, Exh. B, pp. 2-7).

In further support of the motion, defendants have submitted several declarations. Defendant William Smith, a retired librarian, stated that he was working in the library at Wende on March 4, 2005, but did not witness the assault on plaintiff nor was he involved in security or restraint of any inmate following the incident (Item 56, att. 4, ¶¶ 4, 6-7). He stated that he was not aware of any grievances filed by the plaintiff and did not retaliate against the plaintiff for any such grievances. *Id.,* ¶¶ 8-9.

Defendant Sandra Green, a retired CO, stated that she was not involved in any capacity in the incident of March 4, 2005 (Item 56, att. 6, ¶ 5). She was not aware of any grievances or other actions taken by the plaintiff against any staff at Wende. *Id.,* ¶ 6. She never retaliated against the plaintiff or acted maliciously or sadistically to cause plaintiff harm. *Id.,* ¶¶ 7-8.

Defendant Tracey Sillaway (formerly Tedesco), stated that she saw plaintiff on March 10, 2005 in her capacity as a registered nurse in the Inpatient Care Unit ("IPC") at Wende (Item 56, att. 7, ¶ 5). She took plaintiff's vital signs at 12:30 AM and again at

4:30 AM. *Id.,* ¶¶ 8-9. His vital signs were normal and he denied any pain, numbness, or distress. *Id.,* ¶ 8. Defendant Sillaway instructed the plaintiff to ice his left arm which was bruised and swollen from the injury of March 4, 2005. *Id.* Plaintiff's records indicate that he was to be given aspirin and Tylenol as needed for pain, but that he did not ask for any. *Id.,* ¶ 10. Defendant Sillaway did not see plaintiff after his discharge from the IPC on the morning of March 10, 2005. *Id.,* ¶ 11.

Dr. Paula Bozer, Medical Director at Wende, stated that defendants Earl Harrison and Willie Jerinagin were employed at Wende as Nursing Assistants ("NA"), not registered nurses, as plaintiff has identified them in his complaint (Item 56, att.5, ¶ 5). As such, they would have assisted the registered nurses, but would not have provided any direct medical treatment to the plaintiff. *Id.,* ¶ 6. Moreover, personnel records indicate that defendant Jerinagin retired in October 2003 and thus would have had no contact with plaintiff at the time of the incident of March 2004. *Id.,* ¶ 7. Dr. Bozer also stated that isolation rooms are cleaned after each use. This involves the removal of all linens and the cleaning of all equipment with a germicidal solution. *Id.,* ¶ 9.

## DISCUSSION

**1.   Summary Judgment Standard**

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the language of this

Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged.  *See, e.g., Faulkner v. Arista Records LLC*, 797 F.Supp.2d 299, 311 n. 7 (S.D.N.Y. 2011).  Under those standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists.  *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 Fed. Appx. 387 (2d Cir. 2011).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law …." *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed . . .." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted) (quoted in *Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011)).  In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*,

361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The court recognizes its duty to "extend extra consideration" to *pro se* plaintiffs and that "*pro se* parties are to be given special latitude on summary judgment motions." *Bennett v. Goord*, 2006 WL 2794421, at *3 (W.D.N.Y. Aug. 1, 2006), *aff'd*, 2008 WL 5083122 (2d Cir. 2008) (quoting *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* party's pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest").  "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Cole v. Artuz*, 1999 WL 983876, at *3 (S.D.N.Y. October 28, 1999) (citing cases).

Defendants contend that summary judgment should be granted dismissing the complaint as the doctrine of collateral estoppel precludes the plaintiff from relitigating his claims in this court.  Additionally, to the extent that plaintiff has raised any new claims, such as his claims of deliberate indifference to his medical needs and retaliation, defendants contend that plaintiff has offered no evidence suggesting the need for trial of any material factual issues.

The court notes that plaintiff has not filed a response to the motion.  A party's failure to respond to a summary judgment motion "does not [alone] justify the granting of summary judgment."  *Vermont Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004).  Instead, as the Second Circuit has explained,

> where the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden. . . . Moreover, . . . the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement [but] must be satisfied that . . . evidence in the record supports the assertion[s contained therein]. . . . An unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.

*Id.* (internal quotations omitted) (citing, *inter alia*, *Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003)).  In short, just as with a contested motion for summary judgment, the court "must review the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Id.* at 246 (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).

**2. Collateral Estoppel**

Under New York law, the doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 490 (N.Y. 1984).  It is well-settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983.  *See Allen v. McCurry*, 449 U.S. 90 (1980).

"There are two requirements for the application of collateral estoppel to an issue: (1) there must be an identity of issue which has necessarily been decided in the prior

action and is decisive of the present action, and (2) there must have been a full and fair opportunity to contest the decision now said to be controlling." *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (internal quotations and citations omitted); *see also Schwartz v. Public Adm'r of County of Bronx*, 246 N.E.2d 725 (N.Y. 1969). The party seeking the benefit of collateral estoppel bears the burden of proving there is an identity of issue, whereas the party contesting its application bears the burden of proving that he did not have a full and fair opportunity to litigate the claims in the prior action. *Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991); *Shell v. Brun,* 362 F.Supp.2d 398, 400 (W.D.N.Y. 2005).

To show an identity of issue, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein ... and it must be the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair rights or interests established by the first." *Ryan,* 467 N.E.2d 487, 490 (internal citations omitted).  To determine whether the first action provided a full and fair opportunity to litigate requires consideration of:

> the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation.

*Ryan,* 467 N.E.2d at 491.

Applying these factors here, I find that collateral estoppel precludes plaintiff from litigating the his Eighth Amendment claims of failure to protect and unsanitary

9

conditions at the Wende IPC upon his return from ECMC.[3]  Plaintiff's state court action was filed on June 17, 2005 and a trial was conducted on June 6, 2011.  Judge Hudson heard the testimony of plaintiff and defendants Reeves and Lucas and entered four exhibits into the record.  Thereafter, in a written decision, Judge Hudson denied and dismissed the plaintiff's claims.

In his decision, Judge Hudson recognized that the state owes a duty to safeguard inmates within its custody, even from attacks by fellow inmates, but concluded that plaintiff failed to sustain his burden of proving that the risk of attack was reasonably foreseeable.  Judge Hudson found the library at Wende was not unsafe, that the COs could readily observe the inmates in the library, that the lack of metal detectors was not a violation of institutional policy, and that the staff responded promptly to the assault.   Additionally, based on the "perfunctory" nature of plaintiff's testimony regarding unsanitary conditions upon his return to Wende from ECMC and the absence of any corroborating proof, Judge Hudson found that plaintiff had failed to establish his claim of unsanitary conditions.

Although the nature of a common law negligence claim is different than a federal civil rights claim, as is the applicable legal standard, the issues, necessarily decided in the state court case, are identical to those in plaintiff's federal court civil rights action. *See Shell v. Brun,* 362 F.Supp.2d at 401 (New York Court of Claims decision in negligence case given collateral estoppel effect in subsequent federal civil rights action

---

[3]  To the extent that plaintiff seeks damages for his lost or stolen wedding band, such a claim does not present a constitutional violation and thus this claim is not properly brought in an action pursuant to section 1983.  Plaintiff appropriately raised this claim in the New York State Court of Claims, but the claim was dismissed as plaintiff failed to properly exhaust his administrative remedies (Item 57, Exh. B, pp. 9-10).

on same alleged facts); *Wright v. Coughlin*, 1987 WL 19633, at *2 (S.D.N.Y. November 5, 1987) (federal civil rights action collaterally estopped by prior state negligence action because state action"conclusively resolved the same set of facts on which both claims exist[ed]"), *aff'd,* 868 F.2d 1268 (2d Cir. 1988). The issue of defendants' negligence, necessarily decided in the defendants' favor in the Court of Claims, was material and essential to the resolution of plaintiff's state court claims and are decisive of his claims in this court. Accordingly, the defendants have shown an identity of issues.

In declining to file a response to the motion, plaintiff has failed to show that he was denied a full and fair opportunity to litigate these issues in the Court of Claims. Additionally, the relevant factors, including the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate, and the actual extent of litigation, weigh in favor of applying collateral estoppel. *Cox v. Colgane,* 1998 WL 148424, at *7 (S.D.N.Y. March 27, 1998) ("The prior action was adjudicated in a formal proceeding, with the presentation of testimony and evidence. In as much as the Court of Claims had the power to award damages, Plaintiff had an incentive to litigate vigorously."). The only factor warranting further consideration is "the competence and expertise of counsel." Plaintiff proceeded *pro se* in the Court of Claims. Nevertheless, this fact alone is not reason enough to allow plaintiff a second opportunity to litigate his claims in federal court. *See Wright v. Coughlin*, 1987 WL 19633, at *2 ("The mere fact that the plaintiff proceeded *pro se* does not sufficiently establish that he was denied a full and fair opportunity to be heard."). After reviewing the trial transcript (Items 58-61), the court finds that plaintiff competently litigated the action in the Court of Claims.

Accordingly, the doctrine of collateral estoppel precludes the litigation in federal court of plaintiff's section 1983 claims for failure to protect and unsanitary conditions under the Eighth Amendment.

### 3. Deliberate Indifference to Medical Needs

Plaintiff also alleges that the defendants failed to change his bandages or provide medication upon his return to Wende, and thus were deliberately indifferent to his medical needs in violation of the Eight Amendment. "The Eighth Amendment's prohibition against cruel and unusual punishment has been construed to include the denial of adequate medical care for an inmate's serious medical needs." *Woods v. Goord*, 2002 WL 31296325, *2 (S.D.N.Y. October 10, 2002); see also *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The care provided to prisoners to treat their injuries or illnesses must meet minimum medical standards of adequacy and be reasonably intended to satisfy their medical needs. To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 at 106; *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

Under 42 U.S.C. § 1983, every claim for deliberate indifference to a serious medical need must pass a two-pronged test consisting of objective and subjective elements. First, the court must determine whether, objectively speaking, plaintiff's

condition is such that the alleged deprivation of medical assistance is "sufficiently serious." *Woods*, 2002 WL 31296325, at *3 (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66–67 (2d Cir.1994)); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, the court must consider whether the official "'knew that an inmate faced a substantial risk of serious harm, and disregarded that risk by failing to take reasonable measures to abate it.'" *Woods*, 2002 WL 31296325 at *3 (internal cites and alterations omitted); *Harrison v. Barkley*, 219 F.3d at 137.

A serious medical need is one with some urgency or one which, if ignored, may produce death, degeneration or extreme pain. *Hathaway,* 37 F.3d at 66. In *Chance v. Armstrong*,143 F.3d 698, 702 (2d Cir. 1998), the court set forth a non-exhaustive list of factors that are relevant to the inquiry whether a given medical condition is serious. These factors include: (1) whether a reasonable doctor or patient would perceive the medical need in question as "important and worthy of comment or treatment;" (2) whether the medical condition significantly affects daily activities; and (3) "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

In this case, plaintiff has failed to satisfy either component of the deliberate indifference test. Although plaintiff had suffered an assault, he was sufficiently stable to have been transferred from ECMC back to Wende. Defendant Sillaway stated that plaintiff's arm was swollen and bruised, but that his vital signs were stable and he denied any pain, numbness, or distress (Item 56, att. 7, ¶ 8). Defendant Sillaway instructed the plaintiff to ice his arm and noted an order for aspirin and Tylenol as needed. *Id.,* ¶ 10. There is no indication that plaintiff's injuries significantly affected his

daily activities, caused chronic or substantial pain, or were life-threatening. *See Chance,* 143 F.3d at 702; *Hathaway,* 37 F.3d at 66. Moreover, plaintiff has not alleged any facts to support the inference that defendants acted with the requisite culpable state of mind. Following the assault, plaintiff was transferred to ECMC where he stayed for three days. Upon his return to Wende, he was placed in a cell in the IPC and monitored until his return to the general population the next day. He was treated with ice and was prescribed over-the-counter pain relievers.

"A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." *Sonds v. St. Barnabas Hosp. Corr. Health Serv.,* 151 F.Supp.2d 303, 311 (S.D.N.Y. 2001); *see also Chance,* 143 F.3d 698 at 703 ; *McCloud v. Delaney*, 677 F.Supp. 230, 232 (S.D.N.Y.1988) ( "[T]here is no right to the medical treatment of one's choice if the prescribed treatment is based on applicable medical standards."). Additionally, "the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred," does not rise to the level of a constitutional violation. *Sonds,* 151 F.Supp.2d at 311; *see also Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). "As long as the medical care is adequate, there is no Eighth Amendment violation." *Sonds*, 151 F.Supp.2d at 311; *see also Wandell v. Koenigsmann*, 2000 WL 1036030, *3 (S.D.N.Y. July 27, 2000) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

Plaintiff has failed to offer any proof that he suffered from a sufficiently serious

medical condition or that the treatment he received following the assault was inadequate. As no jury could find that defendants acted with deliberate indifference to plaintiff's serious medical needs, the defendants' motion for summary judgment is granted and this claim is dismissed.

### 4. Retaliation

Finally, plaintiff alleges that he was the subject of fabricated misbehavior reports by defendant Smith in retaliation for the filing of grievances against other COs. He also alleges that defendant Green helped other staff at Wende "tell lies" about the plaintiff in retaliation for his grievances. At the outset, the court notes that this cause of action is minimally pled, described in the barest of conclusory allegations, and not supported by any evidence in response to the motion for summary judgment.

Courts examine prisoner retaliation claims "with skepticism and particular care" because they are easily fabricated. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Smith v. Napoli*, 2007 WL 4180708, *3 (W.D.N.Y. November 19, 2007). To establish a First Amendment retaliation claim, a plaintiff must demonstrate that (1) the conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected activity and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). Within the prison context, a common form of constitutionally protected speech is the filing of a lawsuit or inmate grievance. *See, e.g., Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (neither party disputes that prosecution of a lawsuit and the filing of grievances are constitutionally

protected activities); *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ( "[t]he right to petition government for redress of grievances—in both judicial and administrative forums—is among the most precious of the liberties safeguarded by the Bill of Rights") (internal quotation omitted).

"A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.' " *Anderson v. Lapolt*, 2009 WL 3232418, at *5 (N.D.N.Y. October 1, 2009) (quoting *Friedl v. City of New York,* 210 F.3d 79, 85–86 (2d Cir. 2000)); *see also Sawyer v. Jowers*, 2008 WL 4791557, at *6 (N.D.Tex. October 31, 2008) ("To state a claim of retaliation, the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must [allege facts] from which retaliation may plausibly be inferred").

Here, while the court acknowledges that the filing of inmate grievances is protected conduct, plaintiff provides no factual support to establish any adverse action against the plaintiff or any causal connection between the protected activity and the alleged adverse action.  Defendants Smith and Green have both denied any knowledge of plaintiff's grievance filings and denied that they took any retaliatory action against him.  In short, plaintiff has merely alleged that he was issued fraudulent misbehavior reports and was "lied about" in retaliation for his grievances.  These allegations, unsupported by any evidence and based solely on speculation and surmise, are insufficient to withstand the motion for summary judgment.  Accordingly, the defendants' motion for summary judgment is granted and plaintiff's retaliation claim is dismissed.

**CONCLUSION**

The defendants' motion for summary judgment (Item 35) is granted and the complaint is dismissed.

The Clerk of the Court is directed to enter judgment in favor of defendants.

The court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

_____\s\ John T. Curtin\_\_\_
HON. JOHN T. CURTIN.
United States District Judge

Dated: 11/10/2012
p:\pending\2008\08-182.oct2912